[No. B216888. Second Dist., Div. Five. Sept. 22, 2010.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v.
SAHAG-MESROB ARMENIAN CHRISTIAN SCHOOL, Defendant and
Appellant.

**COUNSEL**

Kahdeman Frost and Richard J. Kahdeman for Defendant and Appellant.

Andrea Sheridan Ordin, County Counsel, Richard D. Weiss, Assistant County Counsel, and Dušan Pavlovic, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Defendant, Sahag-Mesrob Armenian Christian School, has appealed from issuance of a May 29, 2009 preliminary injunction. The preliminary injunction was issued at the request of plaintiff, County of Los Angeles. Defendant argues the denial of its "clean hands waiver" application violates the land use provisions of the Religious Land Use and Institutionalized Persons Act of 2000 (the act). (42 U.S.C. § 2000cc.) The act is commonly referred to by the ungainly acronym, RLUIPA. We affirm.

## II. THE PLEADINGS

Plaintiff's complaint, filed on December 22, 2008, alleges defendant owns two separate parcels in an area zoned R-1 (single-family residence zone); on May 28, 2008, defendant filed an application for a conditional use permit to operate "an 800-student kindergarten-through-12th grade private school" on the property; on September 12, 2008, plaintiff received a complaint that defendant was operating a school on the property which caused traffic and noise problems in the neighborhood; on September 15, 2008, a zoning inspector verified the school was operating on the properties without the required conditional use permit; and on September 16, 2008, a zoning inspector mailed a notice of violation to defendant giving it 15 days to cease operating the school.

On September 29, 2008, defendant applied for a "clean hands waiver" pursuant to Los Angeles County Zoning Code section 22.04.110, which would allow it to continue to operate a school while the conditional use permit application was processed. On October 14, 2008, defendant's clean hands waiver application was denied. On October 16, 2008, a zoning inspector mailed a "Final Zoning Enforcement Order" which gave defendant 15 days to cease school activities and explained the failure to do so would result in the imposition of a fine. On December 2, 2008, plaintiff denied defendant's appeal from the Final Zoning Enforcement Order. On November 12 and 13 and December 4, 2008, a zoning inspector verified that defendant continued to operate the school. Based on these factual allegations, plaintiff alleges causes of action for violations of Los Angeles County Zoning Code sections 22.20.015 and 22.60.330 and seeks a declaration the properties' existing use violates the aforementioned zoning code provisions; a determination the properties are a continuing nuisance pursuant to Los Angeles County Zoning

Code section 22.60.350; that defendant and others be enjoined from maintaining a public nuisance; and that defendant be ordered to cease operating the school until the conditional use permit is secured.

On an unspecified date, defendant filed a "cross-complaint" in federal court. The cross-complaint recited defendant's purchase of the property, the submission of the conditional use permit application and the request for a clean hands waiver. The cross-complaint alleged causes of action for violations of the act and title 42 United States Code section 1983.

## III. THE EVIDENCE AND THE TRIAL COURT'S RULING

On December 23, 2008, plaintiff filed a preliminary injunction motion. The preliminary injunction motion was supported by the declarations of Amir Bashar, a zoning enforcement inspector, and Oscar Gomez, a supervising regional planner. Mr. Bashar stated that on September 12, 2008, plaintiff's Department of Regional Planning received a complaint concerning defendant's school. Mr. Bashar determined that defendant applied on May 28, 2008, for a conditional use permit to operate a kindergarten through 12th-grade school and the application was pending. Prior to defendant's purchase of the property on February 1, 2008, a facility which provided short-term care for newborn through five-year-old children operated there under a conditional use permit. Mr. Bashar's inspection revealed the operation of a school for 240 students with 30 staffers.

On September 16, 2008, Mr. Bashar mailed a violation notice notifying defendant it was violating the zoning code. On September 23 and November 14, 2008, Ara Assilian, chair of defendant's board of directors, admitted in two letters the school opened in September 2008 and operated without securing a conditional use permit.

On September 29, 2008, Mr. Assilian filed a clean hands waiver application pursuant to Los Angeles County Zoning Code section 22.04.110[1] requesting that the school be permitted to operate pending issuance of a conditional use

[1] Los Angeles County Zoning Code section 22.04.110 states: "No application for any permit required pursuant to this title shall be accepted for processing or approved where an existing land use, not previously authorized by any statute or ordinance, is being maintained or operated in violation of any applicable provision of this title, or any condition of approval of a land use permit. This provision applies to the operation of land uses only, and does not affect buildings or structures which do not conform to development standards. [¶] Where in his sole discretion the director, whose determination shall be final, determines that the use in question is consistent with the objectives, goals and policies of the General Plan, or that the continuation of said use is essential or desirable to the public convenience or welfare, this provision shall not apply."

permit. On October 14, 2008, the Department of Regional Planning denied defendant's clean hands waiver application and mailed a notice to that effect. On October 16, 2008, Mr. Bashar mailed and posted the Final Zoning Enforcement Order which advised defendant if the school did not cease operating within 15 days, a $654 noncompliance fee would be imposed and the case "referred" for further legal action. On November 12 and 13, 2008, Mr. Bashar confirmed that the school continued to operate. On November 14, 2008, defendant appealed the October 16, 2008 Final Zoning Enforcement Order. On December 2, 2008, a hearing officer sustained the finding of a zoning code violation and imposition of the noncompliance fee. On December 4, 2008, the school continued to operate.

Mr. Gomez's declaration focused on the clean hands waiver issue. Mr. Gomez was familiar with the processing of clean hands waiver applications. The primary factor in assessing a clean hands waiver application is the detrimental effect on the community. Between March 2004 and May 8, 2009, there were 73 clean hands waiver applications processed by the Department of Regional Planning. Of the 73 applications, 22 were denied and 50 granted. In one instance, an extension was granted.

Of the 73 applications, excluding defendant, six were by religious institutions. Five of the applications were granted and one was denied. In all but one case, the common factors that weighed in favor of approval of the clean hands waiver applications were that the property was located on a major commercial street or road; the property was not within a residential community; and the use did not involve a significant expansion from the prior use of the property. All of these cases involved little or no detriment to the surrounding community. One of the five approvals involved a Hindu temple which operated in a "multi-family residential/commercial" area within a residential community. However, the prior use of the property was as a union meeting and assembly hall and this was expected to generate a similar impact in the community. The only denial involved a newly established church in an agricultural zone abutting a residential street. In the case of the denial, it was determined the use as a church would cause traffic and parking problems and was inconsistent with the "public convenience" and welfare. In addition to addressing the clean hands waiver at issue, Mr. Gomez stated the "large" intensification of the property required proper review via the conditional use permit process and pursuant to the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.). Further, Mr. Gomez, an experienced urban planner, indicated the property did not have sufficient area to accommodate the "incoming/outgoing" traffic generated by the school operating with between 240 and 800 students.

Defendant opposed plaintiff's preliminary injunction motion. Shahe Garabedian, the principal, declared that the school operated in association

with the Armenian Missionary Association. The bylaws required that the school operate as a Christian high school; provide a "Christ centered education"; and acquaint students with Christian teaching and the Armenian language. The school's "Statement of Faith" expressly stated their beliefs: that the Bible was the inspired word of God; in the Trinity; in the pure life and divinity of Jesus Christ; in the resurrection of the dead; and in the necessity of rebirth through salvation.

After acquiring the property, defendant retained Hampo Nazerian and his company, HEC Engineers & Contractors, to secure the necessary permits. On May 28, 2008, the conditional use permit application was submitted which was supported by thousands of pages of documents. On September 29, 2008, a clean hands waiver application was submitted upon the recommendation of an employee of the Department of Regional Planning. According to Mr. Nazerian at no time had any employee of plaintiff identified a problem with the school that needed correction; the school would suffer irreparable harm and its First Amendment rights would be violated if the injunction were issued; the school had paid $15,000 in filing and consultant fees; and the school was paying a mortgage of $22,000 per month.

Mr. Nazerian identified the lengthy written submissions, including the clean hands waiver, and calculated the fees paid in connection with the conditional use permit application. Mr. Nazerian believed all necessary documents had been filed and no employee of the Department of Regional Planning had raised any issue in connection with the conditional use permit application. Mr. Assilian, the school's board of directors chair, indicated the fire department had issued its permit which indicated the school met all fire code requirements.

According to Mr. Assilian, the denial of the clean hands waiver application was motivated by political considerations. Paul Novak, the "Planning Deputy" for Supervisor Mike Antonovich, discussed the clean hands waiver application with Mr. Gomez. Mr. Novak supported the denial of defendant's clean hands waiver application. Defendant's attorney, Richard J. Kahdeman, identified three examples where a clean hands waiver was granted by plaintiff while conditional use permit issues were resolved: the "L&J Ballroom Dance Center; a ' "dog ranch" ' in Topanga Canyon; and the Agua Dulce Winery." Mr. Kahdeman also identified a newspaper article which indicated a director of the Department of Regional Planning was terminated three months after defendant's clean hands waiver application was denied. The article indicated the fired director complained about political influence in zoning decisions by the board of supervisors and their staffs.

The trial court granted plaintiff's preliminary injunction request. The trial court found plaintiff's denial of defendant's clean hands waiver application

did not constitute a substantial burden on the exercise of religious beliefs within the meaning of the act. Defendant was enjoined from using the premises unless all of the necessary permits had been secured and were in full force and effect. The trial court denied defendant's stay request. After initially issuing a temporary stay, we denied defendant's supersedeas petition. (*County of Los Angeles v. Sahag-Mesrob Armenian Christian School* (July 8, 2009, B216888) [petn. dism.].)

## IV. DISCUSSION

### A. Standards of Review

We apply the following standards of review. As our Supreme Court explained in *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109 [60 Cal.Rptr.2d 277, 929 P.2d 596]: "At this initial stage in the proceeding, the scope of our inquiry is narrow. We review an order granting a preliminary injunction under an abuse of discretion standard. [Citations.] Review is confined, in other words, to a consideration whether the trial court abused its discretion in ' "evaluat[ing] two interrelated factors when deciding whether or not to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm the defendant is likely to suffer if the preliminary injunction were issued." ' [Citation.]" (See *People ex rel. Reisig v. Acuna* (2010) 182 Cal.App.4th 866, 872–873 [106 Cal.Rptr.3d 560].) We apply a separate standard of review, though, to legal and factual issues. (*Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1094 [271 Cal.Rptr. 44] [" 'the standard of review [for issues of pure law] is not abuse of discretion but whether statutory or constitutional law was correctly interpreted and applied by the trial court' "]; see *California Assn. of Dispensing Opticians v. Pearle Vision Center, Inc.* (1983) 143 Cal.App.3d 419, 426 [191 Cal.Rptr. 762].)

### B. Relevant Provisions of the Act

■ The act covers two areas of religious activity. The first area involves the imposition or implementation of land use regulations on religious institutions. (42 U.S.C. § 2000cc(a)–(b).) The second aspect restricts governmental regulation of the exercise of religious activities by institutionalized persons. The institutionalized person provision is not before us. The land use regulation has two aspects. The first is the substantial burden rule. (42 U.S.C. § 2000cc(a).) The second aspect is the so-called "equal terms" provision. (42 U.S.C. § 2000cc(b).)

The portions of the act as it relates to land use regulation which are pertinent to this case state: "(a) Substantial burdens. [¶] (1) General rule. No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—[¶] (A) is in furtherance of a compelling governmental interest; and [¶] (B) is the least restrictive means of furthering that compelling governmental interest. [¶] (2) Scope of application. This subsection applies in any case in which— [¶] . . . [¶] (C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." (42 U.S.C. § 2000cc(a).) The relevant portion of the equal terms provision states: "(b) Discrimination and exclusion. [¶] (1) Equal terms. No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." (42 U.S.C. § 2000cc(b).)

█ The term "land use regulation," as pertinent to this case, is defined in title 42 United States Code section 2000cc-5(5): "The term 'land use regulation' means a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." A violation of these provisions of the act may be asserted as a defense in civil litigation. (42 U.S.C. § 2000cc-2(a).) The term "claimant" includes a litigant asserting the act's provisions as a defense. (42 U.S.C. § 2000cc-5(1).) The term "religious exercise" is defined: "The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." (42 U.S.C. § 2000cc-5(7)(A).) In terms of an entity's use of a building for the exercise of religious beliefs, the act states, "The use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." (42 U.S.C. § 2000cc-5(7)(B).) █ The substantial burden and equal terms provisions are to be broadly construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of the act and the Constitution. (42 U.S.C. § 2000cc-3(g).)

## C. Historical Background

As explained by Associate Justice Ruth Bader Ginsburg in *Cutter v. Wilkinson* (2005) 544 U.S. 709, 714–715 [161 L.Ed.2d 1020, 125 S.Ct. 2113], the act, adopted in 2000, was the result of Congressional efforts to respond to two United States Supreme Court decisions: in *Employment Div., Ore. Dept. of Human Res. v. Smith* (1990) 494 U.S. 872, 878–882 [108 L.Ed.2d 876, 110 S.Ct. 1595], the Supreme Court held that the free exercise clause does not inhibit general enforcement of neutral laws that incidentally burden religious conduct; in response, Congress enacted the Religious Freedom Restoration Act of 1993 (42 U.S.C. § 2000bb et seq.); in *City of Boerne v. Flores* (1997) 521 U.S. 507, 515–516 [138 L.Ed.2d 624, 117 S.Ct. 2157], the Supreme Court invalidated the Religious Freedom Restoration Act of 1993 as it applied to the states; and held Congress, in enacting the Religious Freedom Restoration Act of 1993, exceeded its enforcement powers under section 5 of the Fourteenth Amendment. (See *Hankins v. Lyght* (2d Cir. 2006) 441 F.3d 96, 105.)

Unsuccessful efforts were then made in Congress to enact federal legislation that would provide greater protections for those engaging in the exercise of religious freedoms. The act was introduced in the Senate on July 13, 2000. Supporters of the legislation provided numerous examples of where local agencies, municipalities and counties refused to accommodate religious activities by enforcement of neutral zoning policies. (Remarks of Sen. Hatch on Sen. No. 2869, 106th Cong., 2d Sess. (2000) 106 Cong. Rec. S6689–S6690; extensions of remarks of Rep. Hyde on Sen. No. 2869, 106th Cong., 2d Sess. (2000) 106 Cong. Rec. E1564–E1567.) One of the authors, Senator Orin Hatch, explained on July 13, 2000: "I rise today to introduce a narrowly focused bill that protects religious liberty from unnecessary governmental interference. . . . [¶] Seven years ago, recognizing the need to strengthen the fundamental right of religious liberty, Congress overwhelmingly passed the Religious Freedom Restoration Act (RFRA). Unfortunately, in 1997, in the case of City of Boerne v. Flores, the Supreme Court held that Congress lacked the authority to enact RFRA as applied to state and local governments. In an attempt to respond to the Boerne decision, I introduced S. 2081 earlier this year. Legislation similar to S. 2081 passed the House of Representatives. Yet, concerns were raised by some regarding the scope of S. 2081, and I undertook an effort to seek out a consensus approach. The legislation I am introducing today, which maintains certain provisions of S. 2081, is a tailored version which represents the product of our efforts." (Remarks of Sen. Hatch on Sen. No. 2869, 106th Cong., 2d Sess. (2000) 106 Cong. Rec. S6687–S6688.)

On July 27, 2000, the act was passed by both houses. (Sen. unanimous consent order on Sen. No. 2869, 106th Cong., 2d Sess. (2000) 106 Cong. Rec.

S7779.) Senator Hatch and Senator Edward Kennedy, both of whom were among the bill's sponsors, placed a joint managers' statement concerning the act in the Congressional Record. One part of the joint managers' statement says, "This Act does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for . . . relief provisions . . . where available without discrimination or unfair delay." (Joint Statement of Sen. Hatch and Sen. Kennedy on Sen. No. 2869, 106th Cong., 2d Sess. (2000) 106 Cong. Rec. S7776.)

## D. The Substantial Burden Portion of the Act Is Not Violated

As noted, title 42 United States Code section 2000cc(a)(1) prohibits governmental imposition or implementation of a land use regulation in a manner that imposes a substantial burden on the exercise of religious beliefs without complying with enumerated criteria. Senators Hatch and Kennedy made it clear the act does not obviate the obligations of religious institutions to apply for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations. (Joint Statement of Sen. Hatch and Sen. Kennedy on Sen. No. 2869, 106th Cong., 2d Sess. (2000) 106 Cong. Rec. S7776.) The parties do not dispute that apart from the act, defendant was required by plaintiff's ordinances to secure a conditional use permit to operate the school.

The requirement the school secure a conditional use permit and comply with the California Environmental Quality Act does not constitute a substantial burden on the exercise of religious freedom under the act. In applying the act, courts are expected to rely on United States Supreme Court analysis as to what is a substantial burden on the exercise of religious beliefs. The joint managers' statement of Senators Hatch and Kennedy states: "The Act does not include a definition of the term 'substantial burden' because it is not the intent of this Act to create a new standard for the definition of 'substantial burden' on religious exercise. Instead, that term as used in the Act should be interpreted by reference to Supreme Court jurisprudence. Nothing in this Act, including the requirement in Section 5(g) that its terms be broadly construed, is intended to change that principle. The term 'substantial burden' as used in this Act is not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden or religious exercise." (Joint Statement of Sen. Hatch and Sen. Kennedy on Sen. No. 2869, 106th Cong., 2d Sess. (2000) 106 Cong. Rec. S7776; see *Abdulhaseeb v. Calbone* (10th Cir. 2010) 600 F.3d 1301, 1315; *Washington v. Klem* (3d Cir. 2007) 497 F.3d 272, 278.)

Several circuit court decisions have synthesized the United States Supreme Court jurisprudence which discusses a substantial burden on the exercise of

religious beliefs. The Seventh Circuit has explained: "[I]nterpreting the First Amendment, the Supreme Court has found a 'substantial burden' to exist when the government put 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.' *Hobbie v. Unemployment Appeals Comm'n of Florida* [(1987)] 480 U.S. 136, 141 [94 L.Ed.2d 190, 107 S.Ct. 1046] (internal quotation marks omitted)." (*Vision Church v. Village of Long Grove* (7th Cir. 2006) 468 F.3d 975, 997.) The Eleventh Circuit has synthesized the relevant Supreme Court authority thusly: "The Court's articulation of what constitutes a 'substantial burden' has varied over time. *See, e.g., Lyng v. Northwest Indian Cemetery Protective Ass'n* [(1988)] 485 U.S. 439, 450 [99 L.Ed.2d 534, 108 S.Ct. 1319] (indicating that no substantial burden exists where regulation does not have 'a tendency to coerce individuals into acting contrary to their religious beliefs'); *Hobbie v. Unemployment Appeals Comm'n of Fla.,* [*supra,*] 480 U.S. [at page] 141 . . . (finding substantial burden when government put 'substantial pressure on an adherent to modify his behavior and to violate his beliefs'); *Thomas v. Review Bd. of Ind. Employment Sec. Div.* [(1981)] 450 U.S. 707, 718 [67 L.Ed.2d 624, 101 S.Ct. 1425] (same); *Sherbert v. Verner* [(1963)] 374 U.S. 398, 404 [10 L.Ed.2d 965, 83 S.Ct. 1790] (finding a substantial burden when an individual is required to 'choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other'); *but see Bowen v. Roy* [(1986)] 476 U.S. 693, 707–[7]08 [90 L.Ed.2d 735, 106 S.Ct. 2147] (finding no substantial burden where government action interfered with, but did not coerce, an individual's religious beliefs) . . . ." (*Midrash Sephardi, Inc. v. Town of Surfside* (11th Cir. 2004) 366 F.3d 1214, 1226–1227.)

The requirement that an entity subject to the act apply for a conditional use permit and comply with the California Environmental Quality Act is not a substantial burden on the exercise of religion within the meaning of the act. In *Konikov v. Orange County* (11th Cir. 2005) 410 F.3d 1317, 1320, the plaintiff purchased property in a residential zone. The plaintiff conducted religious services on the premises. Starting in early 2001, nearby residents complained to zoning officials. An investigation ensued and a violation notice was issued. Eventually, on March 20, 2002, the defendant's code enforcement board found the plaintiff was violating various zoning provisions and ordered correction by May 19, 2002. A daily fine was imposed for each day the plaintiff continued to violate the defendant's zoning laws. (*Id.* at pp. 1320–1321.)

■ The Eleventh Circuit panel held that the plaintiff failed to prove a violation of the substantial burdens portion of the act. (42 U.S.C. § 2000cc(a)(1).) Referring to its prior decision in *Midrash Sephardi, Inc. v. Town of Surfside, supra,* 366 F.3d at page 1235 and footnote 17, the Eleventh Circuit panel explained: "Our recent decision in *Midrash Sephardi . . .*

explains what is meant by 'substantial burden': '[A] "substantial burden" must place more than an inconvenience on religious exercise; a "substantial burden" is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to [forgo] religious precepts or from pressure that mandates religious conduct.' [(*Midrash Sephardi, Inc. v. Town of Surfside, supra*, 366 F.3d at p. 1227.)] We also noted that requiring applications for variances, special permits, or other relief provisions would not offend [the act's] goals. *Id.* at [page] 1235, [footnote] 17 (quoting 146 Cong. Rec. S7774-01, S7776 (2000) (joint statement of Sens. Hatch and Kennedy . . .))." (*Konikov v. Orange County, supra*, 410 F.3d at p. 1323.) Based on this analysis, the Eleventh Circuit panel held: "The zoning ordinance at issue requires [the plaintiff] to apply . . . for a special exception in order to operate a 'religious organization.' It does not prohibit [the plaintiff] from engaging in religious activity. Because application for a special exception does not coerce conformity of a religious adherent's behavior, we hold that such an application requirement does not impose a substantial burden as defined by [the act]." (*Konikov v. Orange County, supra*, 410 F.3d at pp. '1323–1324; accord, *Timberline Baptist Church v. Washington County* (2007) 211 Ore.App. 437 [154 P.3d 759, 782, fn. 23] (dis. opn. of Wollheim, P. J.) ["requiring submission of applications does not itself offend [the act] . . ."].)

The Eleventh Circuit analysis in *Konikov* is applicable here. Defendant was required to secure a conditional use permit to operate the school. Defendant began operating the school without the conditional use permit. The trial court found defendant failed to secure the conditional use permit and, as a result, there was no violation of the act. Requiring defendant to comply with a neutral conditional use permit application process is not a substantial burden on the practice of defendant's religious practices within the meaning of the act. No Supreme Court case holds the failure to comply with a neutral zoning application process is a substantial burden on the exercise of religious freedoms. This is entirely consistent with the joint managers' statement of Senators Hatch and Kennedy.

The same is true of defendant's clean hands waiver request. The denial of defendant's clean hands waiver request did not substantially burden its exercise of religious practices within the meaning of the act. The denial of defendant's clean hands waiver application does not coerce it to conform to anybody's religious belief. Given our analysis, we need not address the issue of whether failure to comply with the California Environmental Quality Act is "a zoning . . . law, or the application of such a law, that limits or restricts a claimant's use or development of land" within the meaning of title 42 United States Code section 2000cc-5(5). (See *St. John's United Church of Christ v. City of Chicago* (7th Cir. 2007) 502 F.3d 616, 642 [condemnation proceeds

are not subject to the act's substantial burden provisions]; *Vision Church v. Village of Long Grove, supra,* 468 F.3d at pp. 997–998 [involuntary annexation claim not subject to the act].) Further, we need not address plaintiff's finality and exhaustion of administrative remedies contentions. (*Grace Community Church v. Lenox Township* (6th Cir. 2008) 544 F.3d 609, 616; *Murphy v. New Milford Zoning Com.* (2d Cir. 2005) 402 F.3d 342, 352.)

E. The Equal Terms Portion of the Act Is Not Violated

Defendant argues plaintiff violated the act's equal terms provision in title 42 United States Code section 2000cc(b) by refusing to grant the clean hands waiver application when similar requests by a dance studio, winery and ranch had previously been approved. The federal Courts of Appeals are in disagreement as to the exact standard to be applied in evaluating the act's equal terms provision. (Compare *Midrash Sephardi, Inc. v. Town of Surfside, supra,* 366 F.3d at pp. 1231–1232 with *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch* (3d Cir. 2007) 510 F.3d 253, 264–272.) We need not resolve that dispute. Under any standard of judicial review, the trial court did not abuse its discretion in concluding no violation of the act's equal terms provisions occurred.

The trial court implicitly relied on Mr. Gomez's declaration that neutral zoning considerations had been utilized in denying clean hands waiver applications by other religious institutions in the past. As noted, in the preceding five years, only six clean hands waiver applications had been submitted by religious groups. Five were granted. In all but one case, the common factors that weighed in favor of approval of the clean hands waiver applications were that the property was located on a major commercial street or road; the property was not within a residential community; and the use did not involve a significant expansion for the prior use of the property. All of these cases involved little or no detriment to the surrounding community. One of the five approvals involved a Hindu temple which operates in a "multi-family residential/commercial" area within a residential community. However, the prior use of the property was as a union meeting and assembly hall and this was expected to generate a similar impact in the community. The only denial involved a newly established church in an agricultural zone abutting a residential street. In the case of that denial of the clean hands waiver application, it was determined the use as a church would cause traffic and parking problems and was inconsistent with the "public convenience" and welfare. Thus, the clean hands waiver application in this case could be denied without violating the act. There is no evidence any other entity seeking to use the property would be treated any differently. Further, Mr. Gomez has explained there are unresolved California Environmental Quality Act issues raised by defendant's conditional use permit application. The trial court did not abuse its discretion in granting plaintiff's preliminary injunction motion.

## V. DISPOSITION

The order granting the preliminary injunction request is affirmed. Plaintiff, County of Los Angeles, shall recover its costs incurred on appeal from defendant, Sahag-Mesrob Armenian Christian School.

Kriegler, J., and Ferns, J.,[*] concurred.

Appellant's petition for review by the Supreme Court was denied January 12, 2011, S187801.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.