Filed 12/27/13  Co. of L.A. v. Sahag-Mesrob Armenian Christian School CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| COUNTY OF LOS ANGELES,<br><br>    Plaintiff, Respondent and<br>    Cross-Defendant,<br><br>    v.<br><br>SAHAG-MESROB ARMENIAN<br>CHRISTIAN SCHOOL,<br><br>    Defendant, Appellant and<br>    Cross-Complainant. | B240667<br><br>(Los Angeles County<br>Super. Ct. No. GC042047) |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Jan A. Pluim, Judge.  Affirmed.

Kahdeman Frost and Richard J. Kahdeman for Defendant, Appellant and Cross-Complainant.

John F. Krattli, County Counsel, Lawrence L. Hafetz, Assistant County Counsel and Dušan Pavlović, Deputy County Counsel for Plaintiff, Respondent and Cross-Defendant.

# I. INTRODUCTION

Defendant, Shahag-Mesrob Armenian Christian School, appeals from a January 30, 2012 judgment in favor of plaintiff, the County of Los Angeles. The judgment dismissing defendant's cross-complaint with prejudice was entered after the trial court granted plaintiff's summary judgment motion. In addition, defendant appeals the denial of its counsel's request for a telephonic appearance. Defendant also appeals the March 28, 2012 order denying its application to vacate the judgment. We affirm the judgment and orders.

# II. PROCEDURAL HISTORY

On December 22, 2008, plaintiff filed a complaint seeking to enjoin defendant from operating a school without a conditional use permit. On December 23, 2008, plaintiff filed a preliminary injunction motion. On January 27, 2009, defendant filed a cross-complaint. Defendant alleged plaintiff's processing of the conditional use permit and denial of the clean hands waiver application violated two federal statutes. Defendant alleged plaintiff violated the Religious Land Use and Institutionalized Persons Act of 2000 (the act) (42 U.S.C. 2000cc) and title 42, United States Code section 1983 (section 1983). On May 29, 2009, the trial court granted defendant's preliminary injunction motion. On September 22, 2010, we affirmed the preliminary injunction order. (*County of Los Angeles v. Sahag-Mesrob Armenian Christian School* (2010) 188 Cal.App.4th 851, 865.) On December 29, 2010, plaintiff dismissed its complaint without prejudice. Plaintiff's action for injunctive and declaratory relief became moot after defendant sold the property to a third party.

On October 27, 2011, plaintiff moved for summary judgment on the cross-complaint. Defendant did not file an opposition because its counsel was incapacitated. On November 28, 2011, defendant's counsel, Richard Kahdeman, suffered a compound fracture of his left ankle that left him bedridden and in pain. On November 29, 2011,

2

Christine Walters, Mr. Kahdeman's assistant, emailed plaintiff's counsel, Dusan Pavlovic, requesting a 30-day extension. Mr. Pavlovic agreed to the 30-day extension and suggested Mr. Kahdeman prepare an ex parte application to continue the summary judgment hearing. On December 8, 2011, Ms. Walters filed a notice of unavailability for Mr. Kahdeman notifying the court of his injury. Ms. Walters is not a lawyer.

On January 5, 2012, Ms. Walters contacted the court clerk. She requested permission for Mr. Kahdeman to appear telephonically for the summary judgment motion and the ex parte application to continue the hearing. On January 7, 2012, Ms. Walters e-mailed a stipulation to continue the hearing to Mr. Pavlovic. On January 9, 2012, Mr. Pavlovic agreed to the stipulation. But in an e-mail response, Mr. Pavlovic reminded Mr. Kahdeman of the necessity of filing an ex parte application to continue the summary judgment hearing. On the same day, Ms. Walters called the court clerk and learned Mr. Kahdeman could not appear telephonically. Defendant never filed the ex parte application for continuance of the summary judgment hearing. Instead, defendant filed a status report regarding Mr. Kahdeman's injuries on January 9, 2012, one day before the summary judgment hearing.

At the January 10, 2012 hearing, Mr. Pavlovic appeared on behalf of plaintiff. No one appeared for defendant. Mr. Pavlovic stated: "Mr. Kahdeman allegedly from what he represented to me suffered an ankle injury. I was notified that via email on December 1st. And they asked me if I would stipulate to a continuance. I said I had no problem. You need to file an ex parte application in order to do that procedurally correct. [¶] I haven't heard anything after that until December 27. At that time Mr. Kahdeman, again, asked me again if I would stipulate to a continuance. I told him I would. I have no problem but you need to file an ex parte application. [¶] And then just yesterday, I got a stipulation without an ex parte application. I signed the stipulation. But my understanding is that no ex parte has been filed." The trial court refused to accept the stipulation, stating it had already decided the summary judgment motion.

On January 19, 2012, the trial court granted plaintiff's summary judgment motion. The trial court ruled plaintiff could not be held liable for damages under the act or section

3

1983. The trial court found the injury, if any, was the result of the preliminary injunction. In addition, the trial court ruled: denial of the clean hands waiver application did not impose a substantial burden on defendant's religious exercise under the act; there was no evidence plaintiff treated defendant on less than equal terms with similarly situated nonreligious entities in violation of the act; plaintiff did not exclude or unreasonably limit defendant's religious exercise; plaintiff did not intentionally interfere with defendant's First Amendment rights to religious exercise, free speech, and freedom of assembly and association; there was no evidence plaintiff treated defendant unequally to similarly situated nonreligious entities; and, plaintiff did not intentionally deprive plaintiff of substantive due process of law. Judgment was entered in plaintiff's favor on January 30, 2012.

On March 28, 2012, defendant filed an ex parte application for an order vacating the judgment. Defendant argued it was deprived of the opportunity to defend itself against the summary judgment motion in two respects. To begin with, defendant asserted it was denied the opportunity to file a summary judgment opposition. And defendant argued it was denied the right to a hearing to request a continuance of the summary judgment motion. Defendant reasoned it was excused from filing an opposition because it justifiably relied on plaintiff's consent to a continuance more than 30 days before the January 10, 2012 hearing. Defendant also asserted the trial court was advised in writing and by telephone of Mr. Kahdeman's incapacitating injuries. Defendant argued it would be "extremely" prejudiced if its ex parte application was denied.

The trial court denied the application on March 28, 2012. The court explained: "Court notes the following: Moving party's Notice of Unavailability listed the dates of 11-28-11 through 1-5-12. [¶] Counsel's secretary/assistant contacted the clerk of the courtroom on 1-9-12 and found he would not be able to appear via Court Call for an Ex Parte or for a Motion. [¶] No Opposition was submitted by moving party. [¶] Upon finding out he would not be allowed to appear via Court Call, Court notes moving party did not retain an appearance attorney to make the appearance and/or file an ex parte application for him. [¶] Court notes the date of the motion hearing was 1-10-12 and

4

today's date is 3-28-12, therefore more than 78 days has passed since the hearing. [¶] Judgment was signed on 1-30-12, 20 days after the hearing."

## III.  EVIDENCE

Defendant purchased two separate adjoining parcels on Palm Street in April 2008. The Palm Street property was located in a single-family residential area, zoned R-1, in Altadena.  Under Los Angeles County Planning and Zoning Code section 22.20.100, a conditional use permit is required for operation of a school in zone R-1.  The previous owner of the Palm Street property had operated a children's group home pursuant to a conditional use permit.  That conditional use permit allowed the property to be used as an 84-children group home for short term care of newborns and toddlers.

On May 28, 2008, defendant applied for a conditional use permit to operate an 800-student kindergarten through twelfth grade private school on the property.  On September 12, 2008, while defendant's conditional use permit application was pending, plaintiff received a public complaint about traffic and noise problems caused by defendant's school.  On September 15, 2008, Amir Bashar, a zoning enforcement officer, conducted an inspection of the Palm Street property.  The school's principal told Mr. Bashar that the school had 240 students and 30 staff members.

On September 16, 2008, Mr. Bashar mailed a violation notice to defendant.  On September 23, 2008, plaintiff received a letter from Ara Assilian, chairperson of defendant's directors' board.  Mr. Assilian regretfully admitted defendant started the school in September 2008 before obtaining a conditional use permit.

On September 29, 2008, defendant submitted a clean hands waiver application pursuant to the Los Angeles Planning and Zoning Code section 22.04.110 which provides:  "No application for any permit required pursuant to this title shall be accepted for processing or approved where an existing land use, not previously authorized by any statute or ordinance, is being maintained or operated in violation of any applicable provision of this title, or any condition of approval of a land use permit. . . .  Where in his

5

sole discretion the director, whose determination shall be final, determines that the use in question is consistent with the objectives, goals and policies of the General Plan, or that the continuation of said use is essential or desirable to the public convenience or welfare, this provision shall not apply.  (Ord. 89-0125 § 1, 1989; Ord. 86-0221 § 1, 1986.) ''

On October 14, 2008, plaintiff denied defendant's clean hands waiver application. Planning Director Bruce McClendon explained:  "In considering your request, I must also consider the possible impact the school may have on the community.  While you have filed a [conditional use permit] application to operate the school, the Department has not reviewed or analyzed the application.  While I understand the reasons for your request and the hardship of discontinuing the operation of the school, I am also concerned with the compatibility of this use with the residential character of the community and the fact that the County has not conducted the required analysis or consideration of all possible impacts, including, but not limited to traffic and noise."  On October 16, 2008, plaintiff notified defendant of the final zoning enforcement order.  On November 14, 2008, defendant appealed the final zoning enforcement order.  On December 8, 2008, the appeal was denied because plaintiff continued to operate the school without a conditional use permit.  On May 20, 2010, defendant abandoned its conditional use permit application.  On November 16, 2010, the Palm Street property was sold to a third party.

Plaintiff submitted a declaration from Oscar Gomez, a supervising regional planner, in support of its summary judgment motion.  Mr. Gomez explained the clean hands waiver applications were reviewed by zoning enforcement officers and submitted to the planning department director for final determination.  In assessing a clean hands waiver application, the primary factor is the detrimental effect on the community.  Out of 97 clean hands waiver applications, 63 were granted and 34 were denied.  Of the 97 applications, 88 were from secular institutions or private individuals.  Of those applications, 57 were granted and 31 were denied.

Of the 97 applications, 9 were by religious institutions.  Six applications were granted and three were denied.  The six waivers were granted because there was little or no detrimental impact to the surrounding community.  The waivers were approved based

6

on these factors: the property was located along a major commercial street or road; the property was not located in a residential community; and the use did not present a significant expansion from and was substantially similar to the prior use of the property. One of the six waiver approvals was for a Hindu temple which operated in a multi-family residential/commercial area. The temple was located in a residential community. However, in the case of the Hindu temple, the prior use of the property was as a union meeting and assembly hall. Thus, the planning department found the Hindu temple would have a similar impact on the community. In two instances, the clean hands waiver were denied to two newly established churches in single-family residential neighborhoods in a light agricultural zone. The planning department determined the churches were not compatible with the residential character of the area and were not desirable to the public convenience and welfare.

Defendant's clean hands waiver application was denied because the expansion and increased use of the Palm Street property required review through the conditional use permit process. Additionally, the change in the use of the Palm Street property required the California Environmental Quality Act review. The previous use of the Palm Street property was for an 84-person children's group home for short term care. In September 2008, defendant operated a school with 240 students. Also, the Palm Street property did not have a sufficient area to accommodate the pick-up and drop-off of the students.

In addition, of the 57 clean hand waivers granted to nonreligious entities, only 1 was granted for a property in an R-1 zone for single family residences. That waiver was granted to a 12-person sober living facility that later expanded to a 20-person adult residential facility. The use of the property was substantially similar to the previous use. Also, the structure used by the adult residential facility remained residential, consistent with the character of the neighborhood. Furthermore, the traffic and noise generated by the adult residential facility was not as intensive as the traffic flow generated by the 240-student school.

7

## IV.  DISCUSSION

### A.  Telephonic Appearance Request

Defendant argues it was error to deny the request of its counsel, Mr. Kahdeman, for a telephonic appearance.  As will be noted, Mr. Kahdeman never made any such request.  On January 5, 2012, Ms. Walters, Mr. Kahdeman's assistant, contacted the clerk to request permission for Mr. Kahdeman to appear telephonically.  This was five days before the January 10, 2012 summary judgment hearing.  Defendant asserts the denial of the request had the practical effect of denying defendant a full and fair hearing.  Defendant contends had its counsel appeared by telephone, he would have sought an ex parte application to continue the hearing on plaintiff's summary judgment motion.  But defendant could have filed the ex parte application in advance of the summary judgment hearing.  Mr. Kahdeman suffered a compound fracture of his left ankle on November 28, 2011, a month after plaintiff moved for summary judgment on October 27, 2011.  Mr. Pavlovic, plaintiff's counsel, agreed to the continuance stipulation on November 29, 2011.  But defense counsel did not draft the stipulation until January 7, 2012, three days before the summary judgment hearing.  In addition, Mr. Kahdeman did not heed Mr. Pavlovic's suggestion to file an ex parte application to continue the summary judgment motion hearing with the trial court.  Had Mr. Kahdeman promptly prepared the stipulation, he could have filed an ex parte application to continue the summary judgment motion hearing.  The ex parte application could have been filed along with the stipulation.  Under California Rules of Court, rule 3.1207(4), an ex parte application pursuant to stipulation does not require personal appearance by the parties.  (Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2013) § 9:157, ¶ 9:370.5, p. 9(I)-146 (rev. # 1, 2010).)  Defendant knew it needed a continuance more than a month in advance of the summary judgment hearing but did nothing.  Further, defendant, a large private school, made no effort to secure other counsel.  There is no evidence Mr. Kahdeman ever made any effort to hire another lawyer.  Instead,

8

improper ex-parte requests for judicial action were made by a non-lawyer, Ms. Walters, at Mr. Kahdeman's express direction. Moreover, there was no need to secure court permission to appear by telephone. (Cal. Rules of Court, rule 3.670(c); Weil & Brown, op. cit., ¶ 9:157, p. 9(I)-106 (rev. # 1, 2013).) The trial court was confronted with an improper ex parte request by a non-lawyer to issue an unnecessary order and ethically acted within its discretion in ruling as it did.

At argument, defendant argued there is evidence the trial court maintained an illegal policy of prohibiting appearances by telephone. Defendant cites to Ms. Walter's declaration. According to Ms. Walters, the deputy clerk in Department P said the trial court rarely allows for appearances by telephone in connection with motions. No doubt, the trial court had the authority to require the parties to appear if the decision is made on a case-by-case basis. (Cal. Rules of Court, rule 3.670(e)(2).) No such order was ever issued in this case. Defendant failed to comply with the requirements for appearing via telephone specified in California Rules of Court, rule 3.670(g). The only course of action taken by Ms. Walters, a non-lawyer, was to make an improper ex parte request with no notice to plaintiff's counsel for permission to appear telephonically. Finally, we note the trial court was entitled to reject defendant's argument that no other lawyer could appear to obtain the stipulated continuance. Defendant operated a large sophisticated school. The trial court could reasonably rule that defendant could have hired other counsel to secure the continuance.

### B. Application for Order to Vacate Judgment

After the trial court granted the summary judgment motion, defendant sought relief from the order and judgment. Code of Civil Procedure[1] section 473, subdivision (b) provides in part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect.  Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken. . . .  Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect. . . ."  Because defendant seeks to set aside summary judgment, it is not entitled to mandatory relief from judgment pursuant to section 473, subdivision (b).  (*Henderson v. Pacific Gas and Electric Co.* (2010) 187 Cal.App.4th 215, 219; *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1418; *English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 148.)

Nor is defendant entitled to discretionary relief under section 473, subdivision (b) which applies to a judgment or an order.  (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 254; *Henderson, supra,* 187 Cal.App.4th at p. 229.)  The trial court's ruling is reviewed for an abuse of discretion.  (*Zamora v. Clayborn Contracting Group, Inc., supra,* 28 Cal.4th at p. 258; *Huh v. Wang, supra,* 158 Cal.App.4th at p. 1425; *Solv-All v. Superior Court* (2005) 131 Cal.App.4th 1003, 1007.)

We conclude defendant's failure to attach a proposed summary judgment opposition with its application warrants denial of the motion.  Under section 473, subdivision (b), defendant was required to submit its proposed opposition along with the motion, "Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted. . . ."  Denial of the application was not an abuse of discretion because defendant failed to

10

comply with the proposed pleading requirement.  (*County of Los Angeles v. Lewis* (1918) 179 Cal. 398, 400; *La Bonte & Ransom Co. v. Scellars* (1928) 90 Cal.App. 183, 185; Weil & Brown, op. cit., ¶ 5:385, p. 5-100 (rev .# 1, 2011).)

## C.  Summary Judgment

Defendant argues it was error to grant plaintiff's unopposed summary judgment motion.  Defendant contends plaintiff's denial of the clean hands waiver application imposed a substantial burden on defendant's religious exercise.  Defendant asserts summary judgment was improper because the trial court did not make any material fact findings on the substantial burden issue.  Defendant's arguments are barred by the doctrine of the law of the case.

Our Supreme Court has explained:  "'The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in a subsequent retrial or appeal in the same case.'"  (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491; accord *Kowis v. Howard* (1992) 3 Cal.4th 888, 892-893.)  Our Supreme Court has stated:  "'Generally, the doctrine of law of the case does not extend to points of law which might have been but were not presented and determined in the prior appeal.  [Citation.]  As an exception to the general rule, the doctrine is . . . held applicable to questions not expressly decided but implicitly decided because they were essential to the decision of the prior appeal.  [Citations.]'"  (*Olson v. Cory* (1983) 35 Cal.3d 390, 399; *Estate of Horman* (1971) 5 Cal.3d 62, 73.)  The law of the case doctrine is applicable even when the prior appellate opinion is erroneous.  (*Morohoshi v. Pacific Home, supra,* 34 Cal.4th at p. 491; *People v. Stanley* (1995) 10 Cal.4th 764, 786.)

In our prior opinion, we affirmed the trial court's preliminary injunction order enjoining defendant from using the premises until it secured a conditional use permit.  (*County of Los Angeles v. Sahag-Mesrob Armenian Christian School, supra,* 188 Cal.App.4th at p. 865.)  We ruled plaintiff did not violate the Religious Land Use and

11

Institutionalized Persons Act. (*Id.* at p. 863.) We explained: "Defendant was required to secure a conditional use permit to operate the school. Defendant began operating the school without the conditional use permit. The trial court found defendant failed to secure the conditional use permit and, as a result, there was no violation of the act. Requiring defendant to comply with a neutral conditional use permit application is not a substantial burden on the practices of defendant's religious practices within the meaning of the act. No Supreme Court case holds the failure to comply with a neutral zoning application process is a substantial burden on the exercise of religious freedoms. This is entirely consistent with the joint managers' statement of Senators Hatch and Kennedy. [¶] The same is true of defendant's clean hands waiver request. The denial of defendant's clean hands waiver request did not substantially burden its exercise of religious practices within the meaning of the act. The denial of defendant's clean hands waiver application does not coerce it to conform to anybody's religious belief." (*Ibid.*) Defendant's contentions that the clean hands waiver denial imposed a substantial burden on its religious exercise is barred by the law of the case doctrine.

V.  DISPOSTION

The summary judgment and related orders under review are affirmed.  Plaintiff, County of Los Angeles, is awarded its appeal costs from defendant, Sahag-Mesrob Armenian Christian School.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.


We concur:


KRIEGLER, J.


O'NEILL, J.[*]


---

[*]    Judge of the Ventura County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.